# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

———————————

Nº 13-CV-3006 (JFB)(ARL)

———————————

JOSEPH A. FERRARA, SR., FRANK H. FINKEL, MARC HERBST, DENISE RICHARDSON, THOMAS F. CORBETT, THOMAS GESUALDI, LOUIS BISIGNANO, ANTHONY D'AQUILA, MICHAEL O'TOOLE, AND BENEDETTO UMBRA, AS TRUSTEES AND FIDUCIARIES OF THE LOCAL 282 PENSION TRUST FUND,

Plaintiffs,

VERSUS

SMITHTOWN TRUCKING CO., INC.,

Defendant.

———————————

**MEMORANDUM AND ORDER**
July 10, 2014

———————————

JOSEPH F. BIANCO, District Judge:

The Trustees ("plaintiffs" or "Trustees") of the Local 282 Pension Trust Fund (the "Fund") bring this action for withdrawal liability against defendant Smithtown Trucking Co., Inc. ("defendant" or "Trucking") pursuant to Sections 502, 515, 4212, and 4301 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Plaintiffs presently move to amend pursuant to Federal Rules of Civil Procedure 15(a), 20, and 21, to join Smithtown Concrete Products Corp. ("Concrete") and Smithtown Realty Corp. ("Realty") as defendants to hold them jointly and severally liable for Trucking's withdrawal liability. Plaintiffs contend both that the corporate veil among the entities should be pierced, and that the three companies are members of a commonly controlled group under ERISA. For the

following reasons, the Court concludes that the proposed amendment is not futile, and, thus, grants plaintiffs' motion to amend and join Concrete and Realty.

## I. BACKGROUND

### A. Factual Allegations

The Court takes the following facts from the proposed amended complaint. These are not findings of fact by the Court; instead, the Court assumes these facts to be true for purposes of deciding the pending motion.

### 1. Smithtown Trucking

Trucking is a party to a series of collective bargaining agreements with the Building Material Teamsters Local 282 ("Local 282"), which required Trucking to make contributions to the Fund. (Amended Complaint ("Am. Compl.") ¶ 9.) In March

2011, Trucking permanently ceased to have an obligation to contribute, thereby withdrawing from the Fund within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a). (Am. Compl. ¶ 10.) In February 2012, the Fund assessed withdrawal liability totaling $698,436. (*Id.* ¶ 11.) As of April 2013, the last month plaintiffs received a payment, Trucking had paid $41,790.52, leaving $656,645.48 due in withdrawal liability.[1] (*Id.* ¶ 30.)

2.    The Proposed Defendants

Trucking, Concrete, and Realty are owned by the same family, including Neil Spevack ("Spevack"); his sister, Sue Graze ("Graze"); and their respective children. (*Id.* ¶ 31.) The companies previously were owned by Spevack's grandparents and their children. (*Id.* ¶ 32.) According to plaintiffs, Spevack received sole ownership of Trucking, while ownership of Concrete and Realty nominally was transferred to Spevack and his family in virtually identical

---

[1] As the Second Circuit has explained:

> ERISA was enacted to protect the interests of employee retirement benefit plan participants and their beneficiaries. One aim is to provide for a "sound termination insurance system" that ensures participants and beneficiaries will receive their full benefits even if, for example, their employer ceases operations. When an employer "permanently ceases all covered operations under the plan," i.e., a "complete withdrawal," an obligation called "withdrawal liability" may be imposed on that employer. In that event, the plan sponsor determines the amount of the employer's withdrawal liability, notifies that employer of the amount owed, and collects the amount of the withdrawal liability from the employer.

*Ret. Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holdings A.S.*, 629 F.3d 282, 285 (2d Cir. 2010) (internal citations omitted). For purposes of this motion, Trucking does not dispute the adequacy of the allegations against it.

ownership amounts. (*Id.* ¶¶ 33–34.) Plaintiffs, however, allege that Spevack maintains total actual ownership and operational control over the companies; the other members of his family have no actual business relationship with the companies (as owners, directors, officers, or employees), other than nominal involvement for purposes of obtaining bank accounts and other formalities. (*Id.* ¶¶ 36–37.) Plaintiffs further allege that shareholder meetings and formal voting are not conducted, Spevack has total voting power, and Spevack is the principal and sole officer and director of all three companies. (*Id.* ¶¶ 40–42.)

According to plaintiffs, the companies operated out of a single location in Smithtown, New York; Realty owns a portion of the property, which consists of a concrete factory, store, storage buildings, and yards, and Concrete owns the remainder. (*Id.* ¶¶ 44–47.) Trucking stored its trucks on the property, loaded its trucks in the yard, and used common fuel tanks with Concrete. (*Id.* ¶¶ 48–49.) Plaintiffs claim there was no written arrangement among the companies regarding the use of the property, Trucking almost never paid rent, and Realty's sole business purpose was owning its portion of the property. (*Id.* ¶¶ 51–54.) In addition, plaintiffs claim that, while Trucking still operated, it made all of Concrete's deliveries, and its only work was delivering Concrete's materials to Concrete's customers. (*Id.* ¶ 60.) Relatedly, plaintiffs claim that customers were led to believe the two entities were a single integrated operation, all customer payments were invoiced and made to Concrete, and Trucking never received any actual revenue other than payments from Concrete to cover Trucking's costs. (*Id.* ¶¶ 61–62.) Thus, plaintiffs allege that, by design, Trucking never earned a profit. (*Id.* ¶ 65.)

In all, plaintiffs allege that there was no formal arrangement governing the interactions between the companies, including employee or vendor sharing, payments for costs, compensation for expenditures, revenue sharing, and the companies' financial relationships. (*Id.* ¶¶ 76–79.) Plaintiffs allege that financial transactions among the companies were made by their outside accountant, with Spevack's consent, solely to reduce the companies' and Spevack's tax burden. (*Id.* ¶ 80.) Thus, they claim that the companies were run as a single, fully integrated operation. They accordingly seek to impose withdrawal liability on Concrete and Realty on the theory that the three companies are members of a single control group (*see id.* ¶ 82); or are a single entity that share an alter ego, single employer, and/or joint employer relationship with each other, such that the corporate veil should be pierced among them (*id.* ¶ 84). (*See also* Am. Compl., at Prayer for Relief ¶ 1.)

## B. Procedural Background

Plaintiffs commenced this action on May 22, 2013. Defendant answered on August 2, 2013. Plaintiffs moved to amend on April 30, 2014. Defendant opposed on May 21, 2014. Plaintiff replied on June 2, 2014. The Court held oral argument on July 9, 2014.[2] The matter is fully submitted.

---

[2] On July 10, 2014, after the motion had been fully briefed and oral argument was held, defendant filed a sur-reply letter. The Court did not request any additional briefing, and counsel did not request the opportunity to file any supplemental submission. Moreover, no issues were raised at oral argument that defendant had not previously been given the opportunity to address in its brief. Therefore, there is no basis for the Court to permit that additional submission. In any event, as noted *infra*, even if the Court were to consider the letter, the arguments raised therein are without merit, and the cases cited therein (which the Court has reviewed) are inapposite.

## II. STANDARD OF REVIEW

### A. Motion to Amend

Federal Rule of Civil Procedure 15 applies to motions to amend the pleadings once the time for amending a pleading as of right has expired. "The court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a); a motion to amend should be denied "only for reasons such as undue delay, bad faith, futility of the amendment or prejudice to the other party." *Crippen v. Town of Hempstead*, No. 07-CV-3478 (JFB)(ARL), 2013 WL 2322874, at *1 (E.D.N.Y. May 22, 2013); *see Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam) ("[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).

### B. Joinder of Parties[3]

Federal Rule of Civil Procedure 21 provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Federal Rule of Civil Procedure 20(a)(2) permits the joinder of persons as defendants in an action

---

[3] "[I]n practical terms there is little difference between [Rules 15, 20, and 21] in that they all leave the decision whether to permit or deny amendment to the district court's discretion." *Oneida Indian Nation v. Cnty. of Oneida*, 199 F.R.D. 61, 72 (N.D.N.Y. 2000) (internal alterations, quotations, and citations omitted).

if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction or occurrence or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). According to the Supreme Court, "joinder of claims, parties and remedies is strongly encouraged," and "the impulse is toward the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966); *see also Roll On Express, Inc. v. Travelers Indem. Co. of Conn.*, No. 09-CV-213 (RLM), 2009 WL 1940731, at *2 (E.D.N.Y. July 2, 2009). Thus, "[l]ike Rule 15, the requirements of Rule 20(a) should be interpreted liberally in order to enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Liegey v. Ellen Figg, Inc.*, No. 02 Civ.1492 JSM JCF, 2003 WL 21361724, at *3 (S.D.N.Y. June 11, 2003) (internal quotation marks and citation omitted).

## III. DISCUSSION

Plaintiffs move to join Concrete and Realty to hold them liable by piercing the corporate veil and/or as members of a commonly controlled group under ERISA. Trucking does not argue that the amendment is untimely, brought in bad faith, or prejudicial, or that plaintiffs cannot satisfy the precepts of Federal Rule of Civil Procedure 20. Instead, it argues that the Court would lack subject matter jurisdiction over Concrete and Realty, the motion is deficient because it lacks evidentiary support, and the amendment is futile. The Court addresses each contention, in turn.

### A. Threshold Issues

#### 1. Subject Matter Jurisdiction

Trucking, relying on *Peacock v. Thomas*, 516 U.S. 349 (1996), argues that the Court lacks subject matter jurisdiction to permit the proposed amendment to the complaint.

In *Peacock*, a plaintiff who had obtained an ERISA judgment against his former employer filed a second action, purportedly under ERISA, seeking to pierce his employer's corporate veil and hold personally liable the defendant, an officer and shareholder of plaintiff's former employer. 516 U.S. at 351. The Supreme Court held, *inter alia*, that it lacked jurisdiction to enforce a prior federal judgment predicated on ERISA violations against a third party, because there was no "provision of ERISA that provides for imposing liability for an extant ERISA judgment against a third party." *Id.* at 353. The Court further noted that the plaintiff's

> veil-piercing claim does not state a cause of action under ERISA and cannot independently support federal jurisdiction. Even if ERISA permits a plaintiff to pierce the corporate veil to reach a defendant not otherwise subject to suit under ERISA, [the plaintiff] could invoke the jurisdiction of the federal courts only by independently alleging a violation of an ERISA provision or term of the plan.

*Id.* at 353–54. The Court rejected the notion that the "subsequent suit arose under § 502(a)(3) of ERISA, which authorizes civil actions for 'appropriate equitable relief' to redress violations of ERISA or the terms of an ERISA plan [because the] complaint in [the subsequent] lawsuit alleged no violation of ERISA or of the plan." *Id.* at 353. Lastly, it held that there

4

was no ancillary enforcement jurisdiction over the plaintiff's action, because courts may not "exercise . . . ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357.

In the instant case, this Court has federal subject matter jurisdiction over this lawsuit because a cause of action indisputably exists under ERISA against Trucking. Joining Concrete and Realty would not and cannot destroy that jurisdiction. Moreover, Trucking has not shown that a separate jurisdictional basis is required to join Concrete or Realty. Unlike the plaintiffs in *Peacock* and the other cases Trucking cites, the Trustees are not seeking to enforce an *extant* judgment against Concrete or Realty; this is a lawsuit seeking to impose liability in the first instance. *See, e.g.*, *Romita v. Anchor Tank Lines, LLC*, No. 11 Civ. 9641(DAB), 2013 WL 432903, at *3 (S.D.N.Y. Feb. 1, 2013) (granting motion to dismiss for lack of subject matter jurisdiction where plaintiffs previously obtained judgment against predecessor entities of defendants and brought suit under ERISA claiming that defendants were liable for judgment obtained against predecessor entities on grounds that (1) ERISA did not provide court with jurisdiction to impose liability for extant ERISA judgment against third party; (2) plaintiffs failed to allege that defendants committed any independent violation of ERISA or terms of employee benefit plan; and (3) ancillary jurisdiction was improper because lawsuit sought to impose obligation to pay existing federal judgment on defendants, who were not already liable for that judgment); *Gesualdi v. Danielle Rigging, Inc.*, No. 09 Civ. 2124(NGG), 2011 WL 2516521, at *2 (E.D.N.Y. June 23, 2011) (holding that *Peacock* applied to successor liability claim brought under ERISA to enforce previously

obtained judgment against defendant's alleged predecessor and accordingly dismissing said claim for lack of subject matter jurisdiction); *see also Labarbera v. United Crane & Rigging Svcs.*, Nos. 08 Civ. 3274(DLI), 08 Civ. 3983(DLI), 2011 WL 1303146 (E.D.N.Y. Mar. 2, 2011) (same). *Peacock* does not stand for the proposition that a plaintiff cannot join parties to a pending ERISA action in order to hold them liable under an alter ego/single employer veil-piercing theory or a common control theory. *See, e.g.*, *Ellis v. All Steel Constr., Inc.*, 389 F.3d 1031, 1033–34 (10th Cir. 2004) ("If an alter-ego claim is asserted in conjunction with the underlying federal cause of action, the latter may provide the basis for ancillary jurisdiction over the alter-ego claim, obviating *Peacock* concerns; it is only when an alter-ego claim is asserted in a separate judgment-enforcement proceeding that *Peacock* requires an independent basis for federal jurisdiction." (citing *Bd. of Trs., Sheet Metal Workers, Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000)));[4] *N.Y. Dist. Council of Carpenters Pension Fund v. KW Constr., Inc.*, No. 07 Civ. 8008(RJS), 2010 WL 3958799, at *3 (S.D.N.Y. Sept. 8, 2010) ("The rule in *Peacock* has no bearing on this case because an independent basis for federal jurisdiction exists—namely, Plaintiffs' claims for ERISA violations, which are brought pursuant to 29 U.S.C. §§ 1145 and 1132. Plaintiffs are not merely seeking to enforce the 2005 judgment against Whyte personally."); *Labarbera*, 2011 WL 1303146, at *12 (noting that jurisdiction exists where parties that

---

[4] According to the Tenth Circuit, "it seems to be commonplace for federal courts to exercise jurisdiction over alter-ego or veil-piercing claims against additional defendants in conjunction with federal causes of action against primary defendants— often without hint of any jurisdictional issue." *Ellis*, 389 F.3d at 1033 n.2 (citing cases).

committed ERISA violations were defendants in the actions). Moreover, in the instant case, in addition to seeking to hold Concrete and Realty liable under an alter-ego claim, plaintiffs assert a claim against them directly under ERISA, namely, a single control group under 29 U.S.C. § 1301.

Accordingly, the Court has federal subject matter jurisdiction over the proposed claims against Concrete and Realty.[5]

### 2. Procedural Deficiencies

Trucking next argues that the motion is deficient because plaintiffs proffered no admissible statement of facts in the form of declarations or affidavits, and cite no factual bases upon which to grant the motion.

Nothing in Rule 15 (or Rules 20 and 21, for that matter) requires a party to support a motion to amend through affidavits or other evidence. *Crago v. Capital Advantage Fin. & Dev., Inc.*, 242 F.R.D. 341, 344 n.3 (D.S.C. 2007); *see* Fed. R. Civ. P. 15, 20, 21. As here, where a defendant argues that a proposed amendment should be denied because it would be futile, "the standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12(b)(6) motion to dismiss—namely, the court must determine whether the

allegations in the complaint state a claim upon which relief can be granted." *Crippen v. Town of Hempstead*, No. 07-CV-3478 (JFB)(ARL), 2009 WL 803117, at *1 n.1 (E.D.N.Y. Mar. 25, 2009); *see also Panther Partners Inc. v. Ikanos Comm'cns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) ("Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim. . . . [C]ourts may consider all possible amendments when determining futility." (internal citations omitted)). Therefore, plaintiffs' motion is not deficient for want of declarations, affidavits, or factual evidence to support the amendment. Trucking also cannot rely on the declarations of Neal Spevack and Sue Graze to demonstrate futility. The Court's focus must be on the pleading's adequacy.

### B. Futility

Turning to the merits, Trucking only argues that the motion should be denied because the Trustees' claims are futile. The Court therefore need not consider other factors that may justify denying the motion (and, in any event, concludes that none of those factors apply in this case).

### 1. Piercing the Corporate Veil

Plaintiffs claim the proposed amendment adequately alleges that the three companies are a single employer and/or alter egos, making them jointly and severally liable for each other's debts and obligations.[6]

---

[5] Defendant's supplemental authority, *Greater New York Nursing Home Division of the 1199/SEIU Greater New York Benefit Fund v. Verrazano Staffing, Inc.*, No. 05-CV-4116 (JG)(RER), 2007 WL 1480777 (E.D.N.Y. Mar. 28, 2007) (Report & Recommendation), is not to the contrary. There, the entity that actually was required to make the contributions to funds pursuant to a collective bargaining agreement was not a party to the action, and there were no allegations of fraud or piercing the corporate veil, rendering the joint employer theory of liability asserted by the plaintiff insufficient to establish subject matter jurisdiction. *See id.* at *4–5. That case neither addresses *Peacock* nor the circumstances at issue here, where the entity actually required to make the contributions is a party.

[6] Defendant's sur-reply letter does not address the viability of plaintiff's "single employer" allegations; rather, it focuses on the joint employer and alter ego theories of liability. The Court notes that plaintiff's briefs (and defendant's opposition) do not address the joint employer theory of liability. (*See, e.g.*, Motion Brief, at 7 ("[T]he three companies are a single entity, single employer, and/or *alter egos*. . . .").) Accordingly, the Court assumes that plaintiffs are not asserting a joint employer theory of liability.

### a.  Single Employer Doctrine

The single employer and alter ego doctrines are "conceptually distinct." *Lihli Fashions Corp., Inc. v. N.L.R.B.*, 80 F.3d 743, 748 (2d Cir. 1996) (quoting *Truck Drivers Local Union No. 807 v. Regional Import & Export Trucking Co.*, 944 F.2d 1037, 1046 (2d Cir. 1991)). Under the single employer doctrine, separate companies will be jointly and severally liable under a collective bargaining agreement signed by the other if they are part of a "single integrated enterprise." *Id.* at 747–48 (holding that the status of two companies as a single employer "is enough to hold them jointly and severally liable for each other's debts and obligations, including financial obligations under [a] collective bargaining agreement," even if the non-signatory may not be bound by the agreement); *Ferrara v. Oakfield Leasing Inc.*, 904 F. Supp. 2d 249, 260 (E.D.N.Y. 2012) ("Under the single employer doctrine, two nominally distinct enterprises will be joint and severally liable under the CBA signed by only one when the two act as a 'single integrated enterprise.'"); *Labarbera v. Cretty Enters., Inc.*, Nos. 03 Civ. 6112, 04 Civ. 5178, 2007 WL 4232765, at *5 (E.D.N.Y. Nov. 28, 2007) (same). The factors to be considered in determining whether separate entities act as a single integrated enterprise are the "interrelationship of operations, common management, centralized control of labor relations and common ownership," as well as "the use of common office facilities and equipment and family connections between or among the various enterprises." *Lihli*, 80 F.3d at 747 (citing *Radio & Television Broad. Tech. Local Union 1264 v. Broad. Serv. of Mobile, Inc.*, 380 U.S. 255, 256 (1965) (per curiam); *Three Sisters Sportswear Co.*, 312 N.L.R.B. 853, 1993 WL 398465, at *15 (N.L.R.B. Sept. 30, 1993); *Goodman Investment Co.*, 292 N.L.R.B. 340, 1989 WL 223774, at *10–11

(N.L.R.B. Jan. 17, 1989)). "[N]ot every factor need be present, and no one particular factor is controlling." *Id.* "'Ultimately, single employer status depends on all the circumstances of the case and is characterized by absence of an 'arm's length relationship found among unintegrated companies.'" *Id.* (quoting *NLRB v. Al Bryant, Inc.*, 711 F.2d 543, 551 (3d Cir. 1983)).

Here, with respect to the single employer allegations, plaintiffs allege that the companies are an integrated, overlapping family enterprise characterized by an absence of an arm's length relationship. Specifically, they allege that the companies have overlapping ownership and control, and shared facilities, equipment, suppliers and vendors, management, and office employees; that Trucking has no customers other than Concrete's and that all of Concrete's deliveries were made by Trucking; that Trucking never received any revenue; and that Realty's sole business purpose was owning the property. (*See* Am. Compl. ¶¶ 31–80.) Given these allegations, the Court concludes that the proposed amendment sufficiently alleges that the companies are a single employer. *See, e.g.*, *Lihli*, 80 F.3d at 747 (upholding NLRB's conclusion that two companies were single employer and jointly and severally liable under collective bargaining agreement because, *inter alia*, operations were functionally integrated, companies provided services and products solely to each other and had overlapping ownership and control, and there was evidence of centralized control of labor relations); *Ferrara*, 904 F. Supp. 2d at 261–63 (finding single employer status where, *inter alia*, operations of companies were interrelated; and companies shared substantially same business purpose, vehicles, and employees; had same customers; and were owned by members of same immediate family); *Finkel v.*

7

*Frattarelli Bros., Inc.*, No. 05-CV-1551 (JFB)(AKT), 2008 WL 2483291, at *10–12 (E.D.N.Y. June 17, 2008) (finding single employer status where, *inter alia*, there was no arm's length business relationship between parties, trucking operations of one company were almost completely intertwined with other company, and one of companies had no customers other than those of other company).

b.      Alter Ego Doctrine

As the Second Circuit has explained, "[t]he purpose of the alter ego doctrine in the ERISA context is to prevent an employer from evading its obligations under the labor laws 'through a sham transaction or technical change in operations.'" *Ret. Plan*, 629 F.3d at 288 (quoting *Newspaper Guild of N.Y., Local No. 3 of the Newspaper Guild, AFL–CIO v. NLRB*, 261 F.3d 291, 298 (2d Cir. 2001)). Specifically, "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." *Id.* (quoting *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 388 (2d Cir. 1989)). Thus, "[t]o protect employee benefits, courts observe 'a general federal policy of piercing the corporate veil when necessary.'" *Id.* (quoting *N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 647 (2d Cir. 2005)).

According to the Second Circuit, "the test of alter ego status is flexible," allowing courts to "weigh the circumstances of the individual case," while recognizing that the following factors are important: "whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Id.* (quoting *Goodman Piping Prods., Inc. v. NLRB*, 741 F.2d 10, 11 (2d Cir. 1984)); *see also Lihli*,

80 F.3d at 748. Courts also typically look to the following factors: "(1) the absence of the formalities which are part and parcel of normal corporate existence, *i.e.*, the issuance of stock, the election of directors, the keeping of corporate records, etc., (2) inadequate capitalization, (3) personal use of corporate funds, and (4) the perpetration of fraud by means of the corporate vehicle." *Ferrara*, 904 F. Supp. 2d at 268 (citation and internal quotation marks omitted).

In its opposition, Trucking argues that the amendment is futile because (1) the alter ego allegations are conclusory; and (2) the companies were engaged in different lines of business, weighing against a finding of a shared business purpose even if management personnel overlapped.[7] Even though the amendment does not allege personal use of corporate funds or the perpetration of fraud, Trucking's cursory contention that the allegations are conclusory is belied by a review of the complaint, which, as noted *supra*, includes extensive allegations about the commonality of management (Spevack); supervision and ownership (Spevack); Trucking's lack of revenue and profit; and Concrete's and Trucking's shared operations, equipment,

---

[7] Trucking's argument mostly overlaps with its contention that plaintiffs will be unable to show the companies are part of a "commonly controlled trade or business" as defined by the Treasury Department. (*See* Opp'n, at 5.) In *Retirement Plan*, however, where the court concluded that the entities' single employer or alter ego status established common control, *see* 629 F.3d at 289, the Second Circuit did not imply that the entities must fall within the definition of "common control" under the Treasury regulations to impose liability under a single employer or alter ego theory. *Cf. Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1220 (2d Cir. 1987) ("Courts have without difficulty disregarded form for substance where ERISA's effectiveness would otherwise be undermined."); *Ferrara*, 904 F. Supp. 2d at 259–71 (addressing joint and several liability without considering Treasury regulations).

and customers. Further, the argument that the amendment would be futile because the companies "were engaged in different lines of business, which weighs against finding a shared business purpose, even if management personnel overlapped" (Opp'n, at 4) ignores the substantial allegations that the companies operated in concert (*e.g.*, Concrete manufactured a product on land owned in part by Realty, and Trucking delivered Concrete's product and parked and fueled its trucks on the other entities' land (*see* Am. Compl. ¶¶ 45–50)) and incorrectly implies that plaintiffs must prove, rather than simply allege, the existence of alter ego liability at this juncture.

Finally, in its sur-reply, Trucking argues that plaintiffs have not alleged that there was a sham transaction and/or technical change in operations in an attempt for Trucking to avoid the obligations of the collective bargaining agreement. The Second Circuit, however, is clear that "the test of alter ego status is flexible," and, "[a]lthough perhaps a 'germane' or 'sufficient basis for imposing alter ego status,' an 'anti-union animus or an intent to evade union obligations,'" such as those in a collective bargaining agreement, "is not a *necessary* factor" to impose alter ego liability. *Retirement Plan*, 629 F.3d at 288 (quoting *Goodman Piping Prods.*, 741 F.2d at 11–12) (alterations omitted) (emphasis in original). Relatedly, "[p]arallel existence . . . [also] is not an impediment to imposing alter ego status." *Id.* Thus, "[c]onsidering the important policy considerations for employing a flexible alter ego test in the ERISA context, and the interlocked relationship of the entities in this case," *id.* at 289, the fact that the entities have existed simultaneously and that plaintiffs have not alleged (and do not contend) that Realty and Concrete engaged in transactions to evade or avoid withdrawal liability is not fatal to their alter ego allegations. Therefore, the Court concludes

that the proposed amendment adequately alleges that the companies are alter egos of each other. *See Trs. of Local 7 Tile Indus. Welfare Fund v. Amarko Marble & Granite Co., Inc.*, No. 13-CV-2779 (FB)(CLP), 2014 WL 1622098, at *6 (E.D.N.Y. Apr. 22, 2014) (adopting Report & Recommendation) (finding that plaintiff adequately alleged elements necessary to pierce corporate veil under alter ego theory where plaintiff alleged that defendants shared an address, identical management, ownership, equipment, customers, business purpose, and supervision, intermingled financial books and records, and failed to deal with each other at arm's length).

In sum, plaintiffs' single employer and alter ego allegations would survive a motion to dismiss pursuant to Rule 12(b)(6). Therefore, the Court concludes that it would not be futile to amend the complaint to include these allegations, and no other grounds exist to deny leave to amend. Accordingly, the Court grants the motion to amend to add these theories of liability.

2.    Single Control Group

Plaintiffs also argue that the amendment adequately alleges that Concrete and Realty are liable as members of Trucking's control group. Trucking argues that the amendment is futile because plaintiffs cannot show the entities are under "common control," because, although Spevack owns all of Trucking, he only owns 46 percent of Concrete and 66 percent of Realty, thus "failing to meet the threshold of a parent-subsidiary group of trades or business under common control." (Opp'n, at 7.)

As the Second Circuit has recognized, "a showing that multiple corporations are under 'common control,' within the meaning of specified Treasury regulations (*i.e.*, 26 C.F.R. §§ 1.414(c)–1 through 1.414(c)–5), will suffice to make each entity in that

'controlled group' responsible for the withdrawal liability of any of the entities so obligated."[8] *Trs. of the Local 813 Pension Trust Fund v. Canal Carting, Inc.*, No. 12-CV-0060 (CBA)(RLM), 2014 WL 843244, at *11 (E.D.N.Y. Mar. 3, 2014) (Report & Recommendation) (citing *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 86 (2d Cir. 1997)). Under the applicable regulations, businesses are under common control if they are members of a "parent-subsidiary" or "brother-sister" groups of businesses. 26 C.F.R. § 1.414(c)–2. Parent-subsidiary corporations are defined as one or more "businesses connected through ownership of a controlling interest with a common parent organization if (i) [a] controlling interest in each of the organizations, except the common parent organization, is owned . . . by one or more of the other organizations; and (ii) [t]he common parent organization owns . . . a controlling interest in at least one of the other organizations, excluding, in computing such controlling interest, any direct ownership interest by such other organizations." *Id.* § 1.414(c)–2(b). Brother-sister corporations are defined as two or more corporations (i) where the same five or fewer persons own a controlling interest in each organization, and (ii) such persons are in effective control of each organization, taking into account the ownership of each person only to the extent such ownership is identical with respect to each such organization. *Id.* § 1.414(c)–2(c). A "combined group of trades or businesses under common control" is defined as any group of three or more organizations, if (1) each such organization is a member of either a parent-subsidiary or brother-sister group of trades or businesses under common control and (2) at least one such organization is the common parent organization of a parent-subsidiary group of trades or businesses under common control and is also a member of a brother-sister group of trades or businesses under common control. *Id.* § 1.414(c)–2(d).

A "controlling interest" is defined as ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote of such corporation, or at least 80 percent of the total value of shares of all classes of stock in such corporation. *Id.* § 1.414(c)–2(b)(2)(i)(A). "Effective control" is defined as ownership of "stock possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of such corporation." *Id.* § 1.414(c)–2(c)(2)(i). Therefore, a "brother-sister" group of businesses under common control must be controlled by the same five or fewer persons owning at least 80 percent of the shares of each corporation, with at least 50 percent of the shareholder's ownership interests in each corporation identical. *Ret. Plan of Nat'l Ret. Find v. Lackmann Culinary Servs., Inc.*, No. 7:10-cv-06316 (VB), 2011 WL 3366354, at *4 (S.D.N.Y. July 29, 2011).

According to Trucking, the proposed amendment is futile because Spevack owns all of Trucking but only 46 percent of Concrete and 66 percent of Realty. (Opp'n, at 7.) The amendment, however, alleges that, of the shareholders in all of the companies, only Spevack exercises voting power. (Am. Compl. ¶¶ 33–34, 37, 40–43.) Thus, under the alleged facts and circumstances, including Spevack's alleged control of the

---

[8] Section 4001(b)(1) of ERISA provides that "all employees of trades or businesses . . . which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer," with the meaning of that term to be construed as "consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under section 414(c) of Title 26." 29 U.S.C. § 1301(b)(1).

companies and his family members' almost non-existent involvement, the actual voting power rests with Spevack. (*Id.* ¶¶ 37–38, 40–43, 82.) Plaintiffs, therefore, adequately allege that Spevack is the 100 percent owner of each of the companies and that, therefore, the companies constitute a "brother-sister" group of trades or business under common control, because Spevack (the only of "the same five or fewer persons" in the group) owns a controlling interest (more than 80 percent of voting power) and is in effective control (holding more than 50 percent of voting power) of each of the companies. *See* 26 C.F.R. § 1.1563-1(a)(6);[9] *Achiro v. Comm'r of Internal Revenue*, 77 T.C. 881, 905–06 (1981) (considering 26 C.F.R. § 1.1563-1(a)(6) and finding brother-sister controlled group where holder of 52 percent of company's voting shares implicitly agreed not to vote his stock or agreed to vote stock in manner specified by brother, and therefore, holder's voting rights could be

---

[9] Regulation 1.1563-1(a)(6) provides, in relevant part:

A share of stock will generally be considered as possessing the voting power accorded to such share by the corporate charter, by-laws, or share certificate. On the other hand, if there is any agreement, whether express or implied, that a shareholder will not vote his stock in a corporation, the formal voting rights possessed by his stock may be disregarded in determining the percentage of the total combined voting power possessed by the stock owned by other shareholders in the corporation, if the result is that the corporation becomes a component member of a controlled group of corporations. Moreover, if a shareholder agrees to vote his stock in a corporation in the manner specified by another shareholder in the corporation, the voting rights possessed by the stock owned by the first shareholder may be considered to be possessed by the stock owned by such other shareholder if the result is that the corporation becomes a component member of a controlled group of corporations.

disregarded or attributed to his brother); *cf. Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Mar-Len, Inc.*, 864 F. Supp. 599, 608 (E.D. Tex. 1994) ("Courts must keep in mind Congress' purpose for enacting section 1301, that is, to prevent employers from avoiding withdrawal liability by fractionizing their operations or 'selling off' assets."). Trucking's reliance on matters outside of the pleadings to demonstrate otherwise, including Spevack's and Graze's affidavits, is not permissible at this stage.

Therefore it would not be futile to amend the complaint to include the single control group allegations, and no other grounds exist to deny leave to amend. Accordingly, the Court also grants plaintiffs' motion to amend on that theory of liability.

## IV. CONCLUSION

For the foregoing reasons, the Court grants plaintiffs' motion to amend to join Concrete and Realty as defendants. Plaintiffs shall file and serve the amended complaint within fourteen (14) days.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:     July 10, 2014
           Central Islip, NY

\* \* \*

Plaintiffs are represented by Joseph J. Vitale, Zachary N. Leeds, and Tzvi N. Mackson of Cohen, Weiss and Simon LLP, 330 West 42nd Street, New York, NY 10036. Trucking is represented by Richard B. Ziskin and Suzanne Harmon Ziskin of The Ziskin Law Firm, LLP, 6268 Jericho Turnpike, Suite 12A, Commack, NY 11725.